IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| I.U.P.A.T. DISTRICT COUNCIL #57 WELFARE, ANNUITY, APPRENTICESHIP, and LABOR MANAGEMENT COOPERATION FUNDS, by ANTHONY DESTEFANO, in his official capacity as a fiduciary and I.U.P.A.T. DISTRICT COUNCIL #57<br>5 Hot Metal Street, Suite 200<br>Pittsburgh, PA 15203<br><br>I.U.P.A.T. DISTRICT COUNCIL #21 HEALTH AND WELFARE, ANNUITY, APPRENTICESHIP, SCHOLARSHIP, VACATION, FINISHING TRADES INSTITUTE OF EASTERN PENNSYLVANIA AND VICINITY, and JOB ORGANIZATION, by JOSEPH ASHDALE, in his official capacity as a fiduciary and I.U.P.A.T. DISTRICT COUNCIL #21<br>2980 Southampton Road<br>Philadelphia, PA 19154<br><br>INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND, by GARY J. MEYERS, in his official capacity as a fiduciary<br>FINISHING TRADES INSTITUTE f/k/a INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES JOINT APPRENTICESHIP AND TRAINING FUND, POLITICAL ACTION TOGETHER FUND, and PAINTERS AND ALLIED TRADES LABOR MANAGEMENT COOPERATION INITIATIVE<br>7234 Parkway Avenue<br>Hanover, MD 21076<br>Plaintiffs<br><br>v.<br><br>PANTHERA PAINTING, INC., and ANDREW MANGANAS and JUSTIN HAUTH and CHRISTINA HAUTH<br>333 Morganza Road<br>Canonsburg, PA 15317<br><br>Defendants. | CIVIL ACTION No. 13-0364 |

**PLAINTIFFS' PRETRIAL STATEMENT**

I. **Statement of Legal Theories and Material Facts**

**A. Jurisdiction and Parties.**

Plaintiffs constitute the following three sets of Multi-Employer Fringe Benefit Funds:

- International Painters and Allied Trade Industry Pension Fund ("Pension Fund").
- I.U.P.A.T. District Council #21 Funds ("DC21 Funds") - covering Eastern Pennsylvania and including and the Medical, Annuity, Training and other funds.
- I.U.P.A.T. District Council #57 Funds ("DC57 Funds") - covering Western Pennsylvania and including Medical, Annuity, Training and other funds.

Collectively, these three sets of Funds will be referred to as "Funds." Such Funds also act as collection agents for certain employee wage deductions as specified in the Amended Complaint.

This is an action by the Funds to collect delinquencies for fringe benefit contributions and wage deductions from Defendants under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132 and 1145, and the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 1985. The Funds are employee benefit plans established and maintained according to ERISA. During the period of the delinquency, Defendant Panthera Painting, Inc. ("Panthera") was one of the largest bridge painting contractors in Pennsylvania. Panthera mainly worked as a subcontractor on public projects with the largest project being the Wade Bridge Project over the Susquehanna River near Harrisburg. At all times material, Individual Defendants Andrew Manganas served as the President, Justin Hauth as Vice President and Defendant Christina (a/k/a Chrystanthi) Hauth as Corporate Secretary of Panthera.

**B.     All of Panthera Painting's painting and ancillary work claimed in the Amended Complaint during the delinquency period was covered by Labor Agreements with I.U.P.A.T. District Councils 21 and 57.**

Panthera was bound by successive labor agreements (the "D.C. 21 and 57 Labor Agreements") with the International Brotherhood of Painters and Allied Trades District Councils 21 and 57 ("Unions")[1] for the geographical jurisdiction of the D.C. 57, Labor Agreements covers Panthera's work in Western Pennsylvania[2], while the D.C. 21 Labor Agreement covers Panthera's work in Eastern Pennsylvania.  In addition, under the Labor Agreements, whenever Panthera worked outside of the geographic areas of a given Labor Agreement, Panthera agreed to be bound by the Union's labor agreement in that respective geographic jurisdiction.[3] Accordingly, all of Panthera's work during the delinquency period was covered by a Labor Agreement with the Unions.

**C.     The Labor Agreements required Panthera Painting to submit fringe benefit contributions based upon the number of hours worked by Panthera's employees.**

The D.C. 21 and 57 Labor Agreements required Panthera to submit monthly fringe benefit contributions to the Funds for pension, medical, annuity and training.  All such contributions are based upon the number of hours of covered work performed by Panthera's employees under the Labor Agreements.  Panthera was not signed to a labor agreement with any other union so there are no jurisdictional issues.

---

[1] The applicable D.C. 57 Labor Agreement covers June 1, 2011 through May 31, 2014.  The applicable D.C. 21 Labor Agreements cover May 1, 2011 through April 30, 2015, and contain substantially the same language except for the rates for wages, fringe benefit contributions and wage deductions.  Copies of the relevant portions of the Labor Agreements and Trust Agreements will be provided in the Exhibit Binder. Panthera also bound itself to the DC 21 and 57 Labor Agreements via the Evergreen Clauses, and through its conduct by submitting monthly remittance reports with or without payment to the DC 21 and 57 Funds during the period of the delinquency, by withholding union dues from its painter employees. and by employing members of the Painters' Unions.
[2] The D.C. 57 Labor Agreement, also provides that Panthera will pay fringe benefit contributions back to the D.C. 57 Funds whenever Panthera employs a D.C. 57 painter outside of the D.C. 57 area DC 57. Labor Agreement, Art. VIII, Sec. 2.
[3] D.C. 57 Labor Agreement, Art. VIII, Sec. 2; DC 21 Labor Agreement, Art. 7, Sec. 7.3.

**D. The Funds should be awarded damages composed of principal, interest, liquidated damages, attorneys' and auditors' fees and costs.**

Payroll audits by the Funds have determined that Panthera owes substantial fringe benefit contributions and wage deductions to the Funds. Plaintiffs' auditors properly calculated unpaid contributions using all forms of compensation paid by Panthera to its covered employees including payments that Panthera alleges were bonuses, per diem payments and expense reimbursements. The Funds will prove that these payments were concealed hourly wage payments on which Panthera paid to the Funds no fringe benefit contributions on wage deductions.

Plaintiffs' auditors also properly calculated unpaid contributions for Panthera employees who Panthera claims did not perform covered work under the Labor Agreements even though such employees were paid hourly wages at the rates specified in the Labor Agreements, and/or were listed as "painters" on Panthera's own certified payrolls, and/or were members of an I.U.P.A.T. Union.

For the period of October 1, 2011 through December 31, 2013, the Funds are also entitled to interest, liquidated damages, attorneys' and auditors' fees plus costs as provided by the Labor Agreements, the incorporated Funds' Trust Agreements, and/or the provisions of ERISA. Under ERISA, 29 U.S.C. §1132(g)(2), the award of interest, liquidated damages and attorneys' fees against Panthera and Individual Defendants is mandatory. Anker Energy Corp. v. Consolidated Coal Co., 177 F.3d 161, 179 & n.9 (3d Cir. 1999).

The Funds claim at least the following principal amounts from Defendants:

By Panthera:

| | |
|---|---|
| To DC 21 Funds | $218,151.26 |
| To DC 57 Funds | $131,971.42 |
| To National Pension Fund | $319,008.52 |
| TOTAL | $669,131.20 |

By Individual Defendants:

To DC 21 Funds

| | |
|---|---|
| Breach of Fiduciary Duty | $178,884.03 |
| Conversion | $ 39,267.23 |

To DC 57 Funds:

| | |
|---|---|
| Breach of Fiduciary Duty | $116,134.85 |
| Conversion | $ 15,836.57 |

To National Pension Fund:

| | |
|---|---|
| Breach of Fiduciary Duty | $315,818.43 |
| Conversion | $ 3,190.09 |
| TOTAL | **$669,131.20** |

Defendants are disputing some of the principal amounts claimed by the Funds. The Funds are continuing to analyze its calculations and the amounts may increase or decrease somewhat based upon this analysis. Ultimately, this is a factual issue to be determined by the Jury.

The Funds' claims for interest and liquidated damages[4] will change based upon the amount of principal determined by the Jury.

4 The following are the bases of the calculations for each set of Funds: DC 21 - Interest - IRS rate for delinquent taxes plus one percent times amount of the principal delinquency; Liquidated Damages - $750 for each monthly report and payment not timely submitted, $500 for each monthly report timely filed without full payment. DC 57 - Interest - one percent per month; Liquidated Damages - 20% of the principal delinquency per monthly report not timely paid; National Pension - Interest - IRS rate for delinquent taxes; Liquidated Damages - 20% of the principal delinquency per monthly report not timely paid.

The amount of auditors' fees and attorneys' fees[5] will continue to increase through the completion of trial.

Plaintiffs' counsel submits that only the principal amounts should be determined by the Jury and that all other sums due should be determined by the Court post-verdict after submissions by counsel.

**E. Individual Defendants Andrew Manganas, Justin Hauth and Christina Hauth failed to cause Panthera Painting to pay monies that were due and owing to the Funds.**

At all relevant times, Individual Defendants Andrew Manganas, Justin Hauth and Christina Hauth were the primary officers of Panthera who had responsibility to collect all monies payable to the Funds resulting from Panthera's work covered by its labor agreements. They had responsibility for the preparation, approval, and submittal of monthly remittance reports and payments to the Funds. Moreover, they had check writing authority and had authority and control over which Panthera bills would be paid and which bills would not be paid. Nonetheless, because they failed to cause Panthera to pay the monies that were due and owing to the Funds, they are personally liable to the Funds for such monies.

**F. Individual Defendants are personally liable to the Funds as an ERISA fiduciary for failing to pay fringe benefit contributions to the Funds.**

Under ERISA, a corporate officer/principal that exercises any authority or control respectively the managers disposition of plan assets (i.e. fringe benefit contributions) is a fiduciary and is, therefore, liable for all delinquent contributions owed by the corporation to a benefit plan 29 U.S.C. §1002 (21)(A)(i) and (iii). Laborers' Combined Funds of Western Pa. v. Cioppa, 346 F. Supp. 2d 765; 2004 U.S. Dist. LEXIS 26955 (W.D. Pa. 2004); Laborers' Combined Funds of Western Pa. v. Parkins, 2002 U.S. Dist. LEXIS 20035, *6-8 (W.D. Pa. 2002) (Where the trust

5 Auditors' fees will be the total fees billed to the Funds through trial. Attorneys' fees are calculated as follows: DC57 Funds - 20% of the total amount owed by Defendants to the Funds or actual attorneys' fees, whichever is higher; DC21 and National Pension Fund - reasonable attorneys' fees.

agreements for a multi-employer fund contain language vesting title to outstanding contributions and/or monies "due and owing" to a benefit fund, such outstanding contributions constitute plan assets.); PMTA-ILA Containerization Fund v. Rose, 1995 U.S. Dist. LEXIS 10877 (E.D. Pa. 1995); Connors v. Paybra Mining Co., 807 F. Supp. 1242 (S.D. W.Va. 1992); Galgay v. Gangloff, 677 F. Supp. 295 (M.D. Pa. 1987), *aff'd* 932 F.2d 959 (3d Cir. 1991).

Here, the Funds' Trust Agreements contain the operative language that vests title of the fringe benefit contributions to the Funds when such contributions become due and owing.[6] Therefore, the fringe benefit contributions became plan assets at the moment they became due, rather than upon receipt by the Funds.

Congress intended that the term "fiduciary" should be liberally construed in favor of protecting participants of employee benefits plans. Galgay at 302; IUE AFL-CIO Pension Fund v. Barker and Williamson, Inc., 788 F.2d 118, 127 (3rd Cir. 1986). The following facts support the conclusion that Individual Defendants were fiduciaries during the period of the delinquencies:

- All served as corporate officers of Panthera;
- Justin Hauth signed documents as Vice President of Panthera, including the subcontract for the Wade Bridge Project and a required form for the West Virginia Secretary of State;
- All had check signing authority on Panthera's bank account at Citizen's Bank;
- Andy Manganas and Justin Hauth signed Panthera's checks, including the paychecks of painters;
- The Hauths lent to Panthera $250,000 to $500,000 during the period of the delinquency, but took no action to cause the proceeds of such loans

[6] Copies of the relevant provisions of the Funds' Trust Agreements will be provided in the Exhibit Binder.

to be used for payment thereof;

- Christina and Justin Hauth regularly received per diem payments from Panthera even though Christina did not perform painting work, and only Justin Hauth occasionally traveled to Panthera job sites;

- Individual Defendants approved and/or caused to be paid the daycare expenses of the children of Justin and Christina Hauth;

- To bolster Panthera's finances, in April 2013, Justin and Christina Hauth granted First Commonwealth Bank (Panthera's lender) a security interest in all rents payable by Panthera to the Hauths for the business property Panthera was leasing from the Hauths;

- Justin Hauth had authority to and transferred monies from Panthera's account to its Citizen's Bank account.

- All directed and/or allowed Panthera to pay other corporate debts, as well as payments to themselves, at the very time that Panthera was neglecting to pay its obligations to the Funds.

- In mid-2013, when Panthera was unable to obtain new bridge painting projects, Individual Defendants caused 446 Painting, LLC to be formed to do such work with Justin and Christina Hauth as principals using the same core group of foreman and painters.

As the corporate principals/officers of Panthera who had authority over what obligations of Panthera were to be paid or not paid, Individual Defendants were ERISA defined fiduciaries because they had control of those plan assets. Their failure to turn those plan assets over to the Funds (i.e., pay the required fringe benefit contributions owed) constitute breaches of their fiduciary duties. Cioppa, 346 F. Supp. 2d 765; Parkins, 2002 U.S. Dist. LEXIS 20035 at *10.

Therefore, Individual Defendants are personally liable as "fiduciaries" under ERISA for the delinquent fringe benefit contributions owed to the Funds.

**G. Individual Defendants are also liable to the Funds for the conversion of wages that were withheld from the paychecks of Panthera's painters but not submitted to the Funds.**

The Funds assert a claim for state common law conversion against Individual Defendants. A corporate officer/principal is liable for conversion of wages that were withheld from employees and subsequently used to pay other corporate liabilities rather than being submitted, as required by labor agreements, to the respective employee benefit funds. Cioppa, 346 F. Supp. 2d at 773; Parkins, 2002 U.S. Dist. LEXIS 20035 at *10-12.

Here, Individual Defendants made or should have made certain deductions for union dues and other monies from the wages of Panthera's employees pursuant to the Labor Agreement. The Labor Agreements required Panthera to submit these amounts to the Funds with the monthly fringe benefit contributions. These amounts, when deducted from the employees' wages, were never the property of Individual Defendants or Panthera.

As set forth above, Individual Defendants had authority and control over the disposition of monies held by Panthera and had the authority and responsibility to remit the wage withholdings to the Funds. Yet, Individual Defendants failed to remit the wage withholdings to the Funds, and allowed such wage withholdings to be used to pay other debts of the corporation, including payments that benefitted them personally. Because Individual Defendants exercised dominion and control over the wage withholdings, and failed to remit such required deductions to the Funds, the Funds have been deprived of the possession and appropriate use of such monies. Therefore, Individual Defendants are liable to the Funds for the conversion of such wage withholdings.

## II. WITNESSES

All witnesses listed below may testify at trial as to liability and/or damages. Telephone numbers are listed for those witnesses who are not current or former employees of Panthera:

1-4. Anthony (Rocky) Destefano
Chris Geronimos
Sam Prodonovich
Thomas M. Tyger

I.U.P.A.T. District Council #57
101 Ewing Road
Carnegie, PA 15106-1523
(412) 276-5758

5. Art Avalotis
Avalotis Corporation
400 Jones Street, P.O. Box 6
Verona, PA 15147
(412) 242-5825

6-7. Nancy Katkowski
Jeffrey Loughrey
Central Data Services
5 Hot Metal Street, Suite 200
Pittsburgh, PA 15203-2355
(412) 432-1141

8. Tim A. Maitland
I.U.P.A.T. Industry Pension Fund
7234 Parkway Drive
Hanover, MD 21076-1307
(410) 294-0957

9-10. Jackie Coyle
Marta M. Cooper
Novak Francella
One Presidential Boulevard, Suite 330
Bala Cynwd, PA 19004
(215) 922-6700
(See attached Payroll Compliance Reviews for the I.U.P.A.T. DC21, DC57 and National Pension Funds for the periods October 1, 2011 through December 31, 2013). The expert testimony of Coyle will be presented by videotaped deposition.

11-12. Mike Previtera
Brian Smith
I.U.P.A.T. D.C. #21 Combined Funds
2980 Southampton Road
Philadelphia, PA 19154
(215) 934-5130

13. Don Steinmeier
I.U.P.A.T. D.C. #21
3540 N. Progress Avenue, Suite 200
Harrisburg, PA 17110
(215) 778-4483

14. Bruce Roberts
945 Leeds Avenue
Monessen, PA 15062

15. Timothy McCully
409 Rich Hill Road
Cheswick, PA 15024-2130

16-17. Andy N. Manganas
Amy Lieb
101 Raphael Drive
McMurray, PA 15317

18-19. Justin Hauth
Christina Hauth
85 Poplar Street
Canonsburg, PA 15317

20. Antonio McDonald
8510 Northwest 32nd Street
Miami, FL 33147

21-22. Bryan Whitlock
Susan Chamberlain
200 Wonderland Trail
Boswell, PA 15531

23. Kevin Whitlock
196 Glesey Road
Ligonier, PA 15658.

24. George Retos
103 Lemoyne Avenue
Washington, PA 15301

25-26. Donavan J. Finnefrock
Bruce Finnefrock

32 ½ Pearl Avenue
Oil City, PA 16301

27. Felipe Abraham
8985 Normandy Boulevard, Lot 266
Jacksonville, FL 33221

28. Andreas N. Manganas
110 Coachside Drive
Canonsburg, PA 15317

29. James E. Lieb
430 North Main Street
Houston, PA 15342

30. Ron Fosnaught
318 Mathews Way
New Castle, PA 16101

31. Michael Bach
68 Harnett Avenue
Wood River, IL 62095

32. Dave Opackla
256 Greenfield Drive, Box 1
Ford City, PA 16226

33. James Randolph
1608 Chatham Road
Camp Hill, PA 17011

34. Jarrod Blough
903 Indiana Avenue
Glassport, PA 15045

35. Rich M. McBurnie
804 Meadow Drive, Apt. 3
Charleroi, PA 15022

36. Mike Headlee
227 Gillespie Hollow Road
Fayette City, PA 15438

37. Timothy Headlee
131 Creek Road
Carmichaels, PA 15320

38. Michael Stewart
RR 441
Colliers, WV 26035

39. William Ralston
4494 Twp. 177
Rayland, OH 43943

40. Larry White
504 Henry Street
Toronto, OH 43964

41. All witnesses listed on Defendants' Pretrial Statements.

Plaintiffs may also call as a witness one or more of the above listed witnesses (or witnesses to be designated) who are knowledgeable about the bridge painting industry, the months and hours typically worked, and the need for significant overtime work.

## III. EXHIBITS

Plaintiffs may introduce into evidence at trial any or all of the following exhibits. (A joint set of exhibit books will be submitted per Paragraph 3 (c) of the Court's Pretrial Order):

1. Panthera Time Sheet for week ending November 20, 2011 for Wade Bridge Job.
2. Panthera envelope with handwritten notation - "Burn it."
3. Kevin Whitlock's Time Books.
4. Tim McCully's Time Books.
5. Brian Whitlock's Time Books.
6. Panthera check dated February 13, 2012.
7. Panthera checks from July 2013.
8. Panthera checks from August 2013.
9. Listing of loans from Justin Hauth to Panthera.
10. Panthera General Ledger from April through July 2013.
11. Special Warranty Deed dated April 5, 2013 from Andrew N. Manganas to Justin Hauth and Christina Hauth.

12. Mortgage dated April 5, 2013 between Justin and Christina Hauth and First Commonwealth Bank as lender for $400,000.

13. Ledger of Loans from Justin and Christina Hauth to Panthera in 2012 and 2013.

14. Real Estate Lease between Justin Hauth and Panthera (tenant) dated March 1, 2013.

15. Memo from Bruce Roberts dated March 11, 2014.

16. Various documents produced by Panthera documenting payments to PA Properties between November 2011 and June 2013.

17. Memo from Bruce Roberts dated March 11, 2014 alleging there were no handwritten ledgers or documentation regarding loans made by Andy Manganas, Justin Hauth or Christina Hauth to Panthera.

18. Citizens Bank signature card dated July 27, 2012 indicating authorized signers on payroll accounts including Justin and Christina (Chrystanthi) Hauth and Andrew N. Manganas.

19. Christina Hauth's W-2 from Panthera indicating wages paid to her in 2013 of $17,400.

20. Justin Hauth's W-2 from Panthera indicating wages paid to him in 2013 of $60,000.

21. Assignment of Rents on 333 Morganza Road property by Justin and Christina Hauth to First Commonwealth Bank dated April 5, 2013.

22. Monthly remittance reports submitted by Panthera to the DC21 and 57 Funds from October 2011 through December 2013.

23. Labor Agreements between DC21 and 57 and Panthera covering the period of the delinquency.

24. Trust Agreements for each of the various Funds.

25. Listings of Rates for Fringe Benefits and Wage Deductions for the periods of the delinquency for DC21 and 57.

26. Certified payrolls submitted by Panthera for the Greene County and Wade Bridge Projects.

27. All exhibits listed on Defendants' Pretrial Statements.

    TUCKER ARENSBERG, P.C.

By: */s/Jeffrey J. Leech*
Jeffrey J. Leech, Esquire
PA ID No. 19841
Neil J. Gregorio, Esquire
PA ID No. 90859
1500 One PPG Place
Pittsburgh, PA  15222
(412) 566-1212
Email: jleech@tuckerlaw.com

    JENNINGS SIGMOND, P.C.

By: */s/ Dawn M. Costa*
Dawn M. Costa
PA I.D. #90245
510 Walnut Street, 16th Floor
Philadelphia, PA 19106
(215) 351-0616
Fax (215) 922-3524
Email: dcosta@jslex.com

Counsel for Plaintiff Funds

LIT:579184-1 017324-147965